**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

SHIRIN MAJLESI, *et al.*,

          *Plaintiffs*,

      v.

MARCO A. RUBIO, *et al.*,

          *Defendants*.

Civil Action No. 25 - 614 (LLA)

## MEMORANDUM OPINION

Plaintiffs Shamseddin Eslami, Bibikhadijeh Gorgani, Elham Eslami, Elmira Eslami, and Parisa Eslami,[1] Iranian nationals who reside in Iran, seek to compel Defendants—Marco Rubio, in his official capacity as Secretary of State, and the Director of the Office of Screening, Analysis, and Coordination ("SAC") at the U.S. Department of State—to adjudicate their visa applications. ECF No. 1.[2]  Plaintiffs contend that their visa applications have been unreasonably delayed in violation of the Administrative Procedure Act ("APA"), 5 U.S.C. § 551 *et seq.*, and the Mandamus Act, 28 U.S.C. § 1361.  ECF No. 1 ¶¶ 131-189.  Defendants have moved to dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  ECF No. 5.  For the reasons explained below, the court will grant the motion to dismiss under Rule 12(b)(6).

---

[1] Shirin Majlesi, Ali Majlesi, Mehrnoosh Vatani, and Abtin Majlesi also joined as Plaintiffs in this action, ECF No. 1, but they have since voluntarily dismissed their claims, ECF No. 11.

[2] Plaintiffs named former SAC Director Robert Jachim as a Defendant, but his successor is "automatically substituted" as a party under Federal Rule of Civil Procedure 25(d).

## I.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY

The court draws the following facts, accepted as true, from Plaintiffs' complaint. *Wright v. Eugene & Agnes E. Meyer Found.*, 68 F.4th 612, 619 (D.C. Cir. 2023). It further takes judicial notice of "information posted on official public websites of government agencies." *Arab v. Blinken*, 600 F. Supp. 3d 59, 63 n.1 (D.D.C. 2022).

The Immigration and Nationality Act ("INA") provides that a U.S. citizen, U.S. national, or lawful permanent resident may petition for a qualifying relative to receive permanent residency in the United States. 8 U.S.C. § 1154. There are several steps to the process. First, the sponsor must file a Form I-130 Petition for Alien Relative with U.S. Citizenship and Immigration Services ("USCIS"). *Id.*; *see* 8 C.F.R. § 204.1(a)(1) (2025); USCIS, *I-130 Petition for Alien Relative*.[3] If USCIS approves the petition, it forwards the case to the U.S. State Department's National Visa Center. 8 C.F.R. § 204.2(g)(3). The foreign national must then submit a DS-260 Immigrant Visa Application and await an interview with a consular officer at the appropriate consular office. 22 C.F.R. §§ 42.61-.63. At the conclusion of the interview, "the consular officer must [either] issue [or] refuse the visa." *Id.* § 42.81(a). If the consular officer determines that he does not have sufficient information to establish visa eligibility, he may "refuse" the visa pending further administrative processing pursuant to Section 221(g) of the INA, which typically consists of additional information-gathering. U.S. Dep't of State, *Administrative Processing Information*;[4] *see* 8 U.S.C. § 1201(g); *Giliana v. Blinken*, 596 F. Supp. 3d 13, 18 (D.D.C. 2022).

Plaintiff Shamseddin Eslami's sibling, a U.S. citizen, filed a Form I-130 on behalf of Eslami; Eslami's spouse, Plaintiff Bibikhadijeh Gorgani; and Eslami and Gorgani's children,

---

[3] *Available at* https://perma.cc/Z29X-AMYU.

[4] *Available at* https://perma.cc/UVN5-T3F4.

Plaintiffs Elham, Elmira, and Parisa Eslami, which USCIS approved in January 2010. ECF No. 1 ¶¶ 66-67. In October 2019, Plaintiffs filed the necessary additional forms and paid the visa application processing fees for their DS-260 visa applications. *Id.* ¶¶ 68-69. In January 2023, Plaintiffs attended a consular interview at the U.S. Embassy in Ankara, Turkey. *Id.* ¶ 70. After the interview, a consular officer provided Plaintiffs a notice stating that their visa applications were being temporarily refused under Section 221(g) and "this refusal may be overcome once the missing documentation and/or administrative processing have been met." *Id.* ¶ 71. The consular officer told them that administrative processing would be concluded "within six months." *Id.* ¶ 72. At the time Plaintiffs filed this action in March 2025, the State Department's online portal indicated that their visas remained "refused for administrative processing." *Id.* ¶ 83. The delayed adjudication of Plaintiffs' visa applications has caused "financial, professional, and emotional harm," ECF No. 6, at 36, including "job loss, inability to work, anxiety and depression, and family travel costs," ECF No. 1 ¶¶ 87-88.

In March 2025, Plaintiffs filed a petition for a writ of mandamus and a complaint for declaratory and injunctive relief against Defendants, seeking to compel final adjudications of their visa applications. ECF No. 1, at 34-35. Defendants have moved to dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). *See* ECF No. 5. The motion is fully briefed. ECF Nos. 5, 6, 13.

## II.    LEGAL STANDARDS

### A.    Federal Rule of Civil Procedure 12(b)(1)

"Federal courts are courts of limited jurisdiction," and it is generally presumed that "a cause lies outside [of] this limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Under Federal Rule of Civil Procedure 12(b)(1), the court must dismiss an action

unless the plaintiff can establish, by a preponderance of the evidence, that the court possesses subject-matter jurisdiction. *Green v. Stuyvesant*, 505 F. Supp. 2d 176, 177-78 (D.D.C. 2007). In reviewing such a motion, the court "is not limited to the allegations set forth in the complaint" and "'may consider materials outside the pleadings.'" *Morrow v. United States*, 723 F. Supp. 2d 71, 76 (D.D.C. 2010) (quoting *Jerome Stevens Pharms., Inc. v. Food & Drug Admin.*, 402 F.3d 1249, 1253 (D.C. Cir. 2005)). Additionally, when reviewing a motion to dismiss pursuant to Rule 12(b)(1), the court is required to "assume the truth of all material factual allegations in the complaint and 'construe the complaint liberally, granting plaintiff the benefit of all inferences that can be derived from the facts alleged.'" *Am. Nat'l Ins. Co. v. Fed. Deposit Ins. Corp.*, 642 F.3d 1137, 1139 (D.C. Cir. 2011) (quoting *Thomas v. Principi*, 394 F.3d 970, 972 (D.C. Cir. 2005)).

### B.    Federal Rule of Civil Procedure 12(b)(6)

Under Rule 12(b)(6), the court will dismiss a complaint that does not "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In evaluating a motion to dismiss under Rule 12(b)(6), the court accepts all well-pleaded factual allegations in the complaint as true. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam); *see also Atherton v. D.C. Off. of Mayor*, 567 F.3d 672, 681 (D.C. Cir. 2009). Although the plausibility standard does not require "detailed factual allegations," it "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Nor will "'naked assertion[s]' devoid of 'further factual enhancement'" suffice. *Iqbal*, 556 U.S. at 678 (alteration in original) (quoting *Twombly*, 550 U.S. at 557).

4

In determining whether a complaint fails to state a claim, a court may consider only the facts alleged in the complaint and "any documents either attached to or incorporated in the complaint and matters of which [the court] may take judicial notice." *N. Am. Butterfly Ass'n v. Wolf*, 977 F.3d 1244, 1249 (D.C. Cir. 2020) (alteration in original) (quoting *Hurd v. District of Columbia*, 864 F.3d 671, 678 (D.C. Cir. 2017)).

### III.    DISCUSSION

Defendants raise three challenges in their motion to dismiss: (1) that the doctrine of consular nonreviewability bars consideration of Plaintiffs' claims, ECF No. 5, at 9-12; (2) that Plaintiffs fail to identify a discrete agency action that Defendants were obligated to, but did not, take, *id.* at 4-8; and (3) that Plaintiffs do not state a claim for unreasonable delay under this Circuit's precedent in *Telecommunications Research & Action Center v. Federal Communications Commission*, 750 F.2d 70 (D.C. Cir. 1984) ("*TRAC*"), *id.* at 12-18.  The court considers each in turn.

### A.    Consular Nonreviewability

Defendants argue that the court must dismiss under Rule 12(b)(6) based on the doctrine of consular nonreviewability.  *Id.* at 9; ECF No. 13, at 14.[5]  In the context of visa adjudications, consular nonreviewability "shields a consular official's decision to issue or withhold a visa from judicial review, at least unless Congress says otherwise." *Baan Rao Thai Rest. v. Pompeo*, 985 F.3d 1020, 1024 (D.C. Cir. 2021).  However, "a long line of decisions from this Court have held that the consular nonreviewability doctrine applies only to final decisions and thus does not bar

---

[5] It is well established that the doctrine of consular nonreviewability is not jurisdictional. *See Dep't of State v. Muñoz*, 602 U.S. 899, 908 n.4 (2024).

judicial review of a consular officer's delay when a visa application has been provisionally refused pending a final decision." *Al-Gharawy v. U.S. Dep't of Homeland Sec.*, 617 F. Supp. 3d 1, 11 (D.D.C. 2022).

In response to this longstanding precedent, Defendants point to the D.C. Circuit's decision in *Karimova v. Abate*, No. 23-5178, 2024 WL 3517852, at *3 (D.C. Cir. July 24, 2024), arguing that while there may have previously been "some debate . . . as to whether the doctrine applie[s] in cases seeking to compel action on visa applications in post-refusal administrative processes, *Karimova* necessitates an end to that debate." ECF No. 5, at 10.  In Defendants' view, *Karimova* conclusively establishes that where a visa application has been refused under Section 221(g) and placed in administrative processing, a final decision has been rendered on the application.  *Id.* at 11; *see Karimova*, 2024 WL 3517852, at *2-3, *6.  The court disagrees.

As an initial matter, the court notes—contrary to Defendants' assertion, ECF No. 5, at 5 n.1—that the D.C. Circuit's decision in *Karimova* does not bind it.  The D.C. Circuit has twice declined to publish *Karimova*.  *See Karimova*, 2024 WL 3517852, at *6; Order, *Karimova v. Abate*, No. 23-5178 (D.C. Cir. Sep. 10, 2024), Doc. No. 2074062, at 1.  Under the D.C. Circuit's rules, "[w]hile unpublished dispositions *may* be cited[,] . . . a panel's decision to issue an unpublished disposition means that the panel *sees no precedential value* in that disposition." D.C. Cir. R. 36(e)(2) (emphases added).[6]  This court takes the D.C. Circuit at its word and considers, but does not find itself bound by, *Karimova*.

---

[6] Defendants cite D.C. Circuit Rule 32.1(b)(1)(B) for the proposition that unpublished opinions "may be cited as precedent," ECF No. 5, at 5 n.1 (quoting D.C. Cir. R. 32.1(b)(1)(B)), which is true as far as it goes.  But as the D.C. Circuit has explained—in a published opinion that is binding on this court—"[w]hile [unpublished] dispositions have some precedential value, they are

*(continued on next page)*

Having considered *Karimova*, the court is not inclined to follow it.  The plaintiff in *Karimova* was in a similar position as Plaintiffs: she had applied for a visa, interviewed at an embassy, had her application "officially 'refused'" under Section 221(g), and then had her application placed in administrative processing.  2024 WL 3517852, at *2 (quoted sources omitted).  Relying on various regulations and the Department of State's Foreign Affairs Manual ("FAM"), the D.C. Circuit reasoned that placing an application in administrative processing must be a "final" decision because a relevant regulation instructed that a consular officer "*must* issue" or "refuse" a visa following an interview, *id.* at *1 (quoting 22 C.F.R. § 42.81(a)), and because the FAM directed that, after an interview, "[c]onsular officers 'cannot temporarily refuse, suspend, or hold the visa for future action,'" *id.* (quoting 9 FAM § 504.1-3(g)).  Drawing on these sources, the D.C. Circuit characterized Ms. Karimova as requesting "yet another 'final decision' on her already-refused visa application," as opposed to a final decision in the first instance.  *Id.* at *6.

The court concludes that the D.C. Circuit's interpretation places too much emphasis on the current language in the FAM—which does not carry the force of law, *see Aramnahad v. Rubio*, No. 24-CV-1817, 2025 WL 973483, at *7 (D.D.C. Mar. 31, 2025)—and too little emphasis on the allegations in a plaintiff's complaint and the realities of the visa-adjudication process, *see Al-Gharawy*, 617 F. Supp. 3d at 16 ("Although the State Department may 'choose[] to *characterize* a section 221(g) notification as a "refusal,"' that magic word is not a get-out-of-review-free

---

'obviously . . . not of the same precedential value as would be an opinion of this Court treating the question on the merits.'" *In re Grant*, 635 F.3d 1227, 1232 (D.C. Cir. 2011) (quoting *Edelman v. Jordan*, 415 U.S. 651, 671(1974)).  Accordingly, these decisions "may be considered persuasive authority, but they do not constrain a panel of the [C]ourt from reaching a contrary conclusion in a published opinion after full consideration of the issue." *Id.*  Other than their say-so, ECF No. 5, at 5 n.1; ECF No. 13, at 6-7, Defendants have pointed to no authority suggesting that this court should take a different approach.

card . . . [and] the Court must examine [a plaintiff's] allegations to determine whether the complaint sufficiently alleges that the consular officer's 'refusal' was in fact an 'interim decision [that] is not sufficiently final to warrant the application of the [consular nonreviewability] doctrine.'" (citation omitted) (first, fourth, and fifth alterations in original) (quoting *Vulupala v. Barr*, 438 F. Supp. 3d 93, 98 (D.D.C. 2020))).  It is impossible to square Defendants' assertion that placement in "administrative processing" was a *final* disposition of Plaintiffs' visa applications with the allegations in the complaint.  Plaintiffs allege that they were informed that their applications had been "temporarily refused under section 221(g)," that the "refusal may be overcome once the missing documentation and/or administrative processing have been met," and that they could expect a final visa determination "within 6 months."  ECF No. 1 ¶¶ 71-72.[7] Accepting these allegations as true and drawing all inferences in Plaintiffs' favor—as this court must, *see Iqbal*, 556 U.S. at 678—Plaintiffs have sufficiently alleged that they have not yet received final decisions on their visa applications, *see Aramnahad*, 2025 WL 973483, at *8.  *Cf. Ibrahim v. Spera*, No. 23-CV-3563, 2024 WL 4103702, at *3 n.2 (D.D.C. Sep. 6, 2024) (noting "that it is extremely difficult to square [*Karimova*'s] analysis, which is based largely on agency

---

[7] The court's conclusion that placement in administrative processing under Section 221(g) is not a final determination is underscored by language on the Department of State's website, of which the court takes judicial notice.  *See Arab*, 600 F. Supp. 3d at 63 n.1.  The website explains that an application is placed in administrative processing when "[t]he consular officer could not conclude [a person] w[as] elegible [sic] for the visa sought and additional administrative processing of [the] application is required."  U.S. Dep't of State, *INA Section 221(g) – Incomplete Application or Supporting Documentation*, https://perma.cc/3S7V-MSH9.  It further elaborates that a person who is placed in administrative processing "will be given a letter stating this" and "the embassy or consulate will contact [him] when the administrative processing is complete."  *Id.*  An inability to "conclude" whether a person is eligible for a visa is plainly different from a conclusive determination that a person is ineligible for a visa.  And the language on the website, which instructs applicants to wait for the embassy or consulate to contact them after administrative processing is complete, supports the court's conclusion that an applicant in this position is still awaiting a final decision on his application.

8

regulations, with the communications that visa applicants actually receive from various consulates").

Plaintiffs do not challenge a final decision denying their visa applications, nor do they contend that this court should order Defendants to grant their applications. *See generally* ECF No. 1. Rather, they argue only that Defendants must "timely adjudicate [their] visa applications." *Id.* ¶ 137. Several courts in this district have found, even after *Karimova*, that "the doctrine of consular nonreviewability does not bar challenges to timing as opposed to substance." *de Belinay v. Mayorkas*, No. 24-CV-240, 2025 WL 671120, at *4 (D.D.C. Mar. 3, 2025) (quoting *Shabestary v. Sanders*, No. 24-CV-362, 2024 WL 5118229, at *3 (D.D.C. Dec. 16, 2024)); *see, e.g.*, *Sluev v. Rubio*, No. 25-CV-899, 2026 WL 507894, at *2 (D.D.C. Feb. 24, 2026); *Tehran v. Rubio*, No. 25-CV-1584, 2025 WL 3551629, at *3-4 (D.D.C. Dec. 11, 2025); *Saraev v. Rubio*, No. 25-CV-1740, 2025 WL 3458777, at *3 (D.D.C. Dec. 2, 2025); *Thein v. Trump*, No. 25-CV-2369, 2025 WL 2418402, at *7-10 (D.D.C. Aug. 21, 2025); *Shushkov v. Rubio*, No 24-CV-2265, 2025 WL 2389939, at *4 (D.D.C. Aug. 18, 2025); *Diabin v. Rubio*, No. 24-CV-3374, 2025 WL 1824841, at *3 (D.D.C. July 2, 2025); *Aramnahad*, 2025 WL 973483, at *10; *Mahmoodi v. Altman-Winans*, No. 24-CV-2010, 2025 WL 763754, at *4-6 (D.D.C. Mar. 11, 2025). *But see Rahman v. Bouldin*, No. 25-CV-1836, 2025 WL 3248585, at *3 (D.D.C. Nov. 21, 2025) (holding that the consular nonreviewability doctrine bars review of visa applications placed in administrative processing); *Rezvani v. Rubio*, No. 24-CV-3381, 2025 WL 1293358, at *2 (D.D.C. May 5, 2025) (noting that "the consular non-reviewability doctrine would likely apply" but dismissing suit for failure to demonstrate a non-discretionary duty); *Datta v. Rubio*, No. 24-CV-2937, 2025 WL 752643, at *5 (D.D.C. Mar. 10, 2025) (noting that *Karimova* "casts doubt" on earlier cases holding that the consular nonreviewability doctrine did not apply).

This court follows the majority approach and determines that Plaintiffs' action is properly understood as an attempt to compel an adjudication that has been unreasonably delayed, rather than one aimed at changing a final decision that has already been rendered. Accordingly, Plaintiffs' case is not barred by the doctrine of consular nonreviewability.[8]

### B.      Non-Discretionary Duty

Defendants also contend that Plaintiffs have failed to allege that "the government agency or official is violating a clear duty to act"—a threshold requirement for a mandamus claim and a merits question for a claim of unreasonable delay under the APA. *Am. Hosp. Ass'n v. Burwell*, 812 F.3d 183, 189 (D.C. Cir. 2016); *see* ECF No. 5, at 4. Defendants argue that Plaintiffs cannot identify a non-discretionary duty "requiring a consular officer to take any action on the visa applications now that they have been refused under INA Section 221(g)." ECF No. 5, at 4.

As support for this proposition, Defendants again point to *Karimova*, which they argue is "dispositive" in cases like this one. *Id.* at 5. In *Karimova*, the D.C. Circuit held that the plaintiff had "not identified an adequate legal basis" for her action seeking to "compel[] the consular officer overseeing her visa application to make yet another 'final decision' on her already-refused visa application." 2024 WL 3517852, at *6. The Court characterized the plaintiff as "argu[ing] that Section 555(b) [of the APA]—and *only* Section 555(b)—'places a clear, non-discretionary duty' on her consular officer to re-adjudicate her already-refused application." *Id.* at *3. The Court

---

[8] Additionally, Plaintiffs argue that Defendants' failure to docket the administrative record proves that their "continued delay is unreasonable"—and that the court cannot conclude otherwise unless Defendants comply with Local Civil Rule 7(n). ECF No. 6, at 21 & n.5. The court disagrees because this case involves agency *inaction* and Defendants have no obligation to file a certified list of the contents of the administrative record. *See Janay v. Blinken*, 743 F. Supp. 3d 96, 105 (D.D.C. 2024); *Dastagir v. Blinken*, 557 F. Supp. 3d 160, 164 n.5 (D.D.C. 2021); *Nat'l L. Ctr. on Homelessness & Poverty v. U.S. Dep't of Veterans Affs.*, 842 F. Supp. 2d 127, 130 (D.D.C. 2012).

determined that "Section 555(b) does no such thing" and instead "simply expresses 'a congressional view that agencies should act within reasonable time frames.'"  *Id.* (quoting *TRAC*, 750 F.2d at 77).

The problem for Defendants is that this rationale is wholly inapplicable given this court's understanding of the visa process.  *See supra* Part III.A.  It may be true that Section 555(b) does not create a duty to *re*-adjudicate a final decision where one has already been made, but, as this court sees it, that is not what Plaintiffs are seeking.  Instead, they are seeking an initial, final determination on their visa applications.  In this way, any discussion of how Section 555(b) applies to requests to re-adjudicate final visa decisions means very little for plaintiffs who seek an initial final decision and wish for it to be made "within [a] reasonable time frame[]" as Section 555(b) requires.  *TRAC*, 750 F.2d at 77.

Several courts in this district have concluded that there is a duty to complete adjudication of visa applications, explaining "that both the APA and State Department regulations create a clear duty to adjudicate visa applications within a reasonable time."  *Rashidian v. Garland*, No. 23-CV-1187, 2024 WL 1076810, at *5 (D.D.C. Mar. 8, 2024); *see, e.g.*, *Tehran*, 2025 WL 3551629, at *4-5; *Saraev,* 2025 WL 3458777, at *3; *Fetanat v. Rubio*, No. 24-CV-2298, 2025 WL 2643487, at *3-4 (D.D.C. Sep. 15, 2025); *Nikjooy v. Rubio*, 804 F. Supp. 3d 76, 85 (D.D.C. 2025); *Tolymbekova v. Rubio*, No. 25-CV-295, 2025 WL 2576312, at *5-6 (D.D.C. Sep. 5, 2025); *Thein*, 2025 WL 2418402, at *11; *Diabin*, 2025 WL 1824841, at *3-4; *Aramnahad*, 2025 WL 973483, at *8-10; *Vulupala*, 438 F. Supp. 3d at 100.  To be sure, this view is not unanimous.  *See Alnaddaf v. Rubio*, No. 25-CV-2491, 2026 WL 555314, at *13 (D.D.C. Feb. 27, 2026) (finding that the plaintiffs failed to allege a non-discretionary duty to take further action on visa applications that had been placed in administrative processing); *see also, e.g.*, *Jahani v. Rubio*, No. 25-CV-989,

11

2025 WL 3653542, at *3-4 (D.D.C. Dec. 17, 2025); *Baradaran v. Rubio*, No. 24-CV-2946, 2025 WL 2506546, at *2-4 (D.D.C. Sep. 2, 2025); *Pour v. Rubio*, No. 25-CV-573, 2025 WL 2374559, at *4-7 (D.D.C. Aug. 14, 2025); *Seifan v. Sweeney*, No. 25-CV-261, 2025 WL 2171093, at *4-5 (D.D.C. July 31, 2025); *Javaid v. Armstrong*, No. 24-CV-2716, 2025 WL 2144100, at *2-3 (D.D.C. July 29, 2025); *Pasiukevich v. Lawton*, No. 24-CV-3349, 2025 WL 2023207, at *3-4 (D.D.C. July 17, 2025); *Ibrahim*, 2024 WL 4103702, at *3.

This court continues to adhere to the view that consular officials have a non-discretionary duty to fully adjudicate a visa application. Issuing a final decision on a visa application is plainly a discrete agency action, and it is required by both the APA and federal regulations. *See Khazaei v. Blinken*, No. 23-CV-1419, 2023 WL 6065095, at *6 (D.D.C. Sep. 18, 2023); *see also Mashpee Wampanoag Tribal Council, Inc. v. Norton*, 336 F.3d 1094, 1099 (D.C. Cir. 2003) (explaining that the APA "imposes a general but nondiscretionary duty upon an administrative agency to pass upon a matter presented to it 'within a reasonable time,' 5 U.S.C. § 555(b), and authorizes a reviewing court to 'compel agency action unlawfully withheld or unreasonably delayed,' *id.* § 706(1)").

But even if the court read *Karimova* with the D.C. Circuit's understanding that Section 221(g) refusals are final, it would still agree with Plaintiffs. That is because—even taking the argument on the D.C. Circuit's own terms—the Court did not rule that *no* source of law creates a non-discretionary duty to re-adjudicate a visa application, just that "Section 555(b)—and *only* Section 555(b) . . . does no such thing." 2024 WL 3517852, at *3. Setting Section 555(b) aside, Plaintiffs have cited additional sources of law that they contend establish a non-discretionary duty to fully adjudicate their visas application. ECF No. 1 ¶¶ 93, 100 (citing 22 C.F.R. § 42.81(a) and 8 U.S.C. § 1151(b)(2)(A)(i), (c)(1)). At this early stage of litigation, that is sufficient.

12

## C.    Unreasonable Delay

On the merits, Defendants argue that Plaintiffs have failed to state a claim for unreasonable delay for which relief can be granted.  ECF No. 5, at 12-18; ECF No. 13, at 15-23.  Plaintiffs' claims under the APA and the Mandamus Act share the same standards for obtaining relief.  *Viet. Veterans of Am. v. Shinseki*, 599 F.3d 654, 659 n.6 (D.C. Cir. 2010).  "The central question in evaluating 'a claim of unreasonable delay' is 'whether the agency's delay is so egregious as to warrant mandamus.'"  *In re Core Commc'ns, Inc.*, 531 F.3d 849, 855 (D.C. Cir. 2008) (quoting *TRAC*, 750 F.2d at 79).  Unreasonable delay is analyzed using six "*TRAC*" factors:

> (1) the time agencies take to make decisions must be governed by a rule of reason; (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason; (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake; (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority; (5) the court should also take into account the nature and extent of the interests prejudiced by delay; and (6) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.

*Am. Hosp. Ass'n,* 812 F.3d at 189 (quoting *TRAC*, 750 F.2d at 80).  While not "ironclad," the *TRAC* factors provide "useful guidance in assessing claims of agency delay."  *In re Core Commc'ns, Inc.*, 531 F.3d at 855 (quoting *TRAC*, 750 F.2d at 80).  "Each case must be analyzed according to its own unique circumstances," because each "will present its own slightly different set of factors to consider."  *Air Line Pilots Ass'n, Int'l v. Civ. Aeronautics Bd.*, 750 F.2d 81, 86 (D.C. Cir. 1984).  The first and fourth factors are most important in the visa context.  *Da Costa v.*

13

*Immigr. Inv. Program Off.*, 80 F.4th 330, 340 (D.C. Cir. 2023).  Weighing the *TRAC* factors here, the court concludes that Plaintiffs have failed to plausibly allege a claim for unreasonable delay.[9]

The first two factors—requiring agencies to follow "a rule of reason" that justifies their timeline and consider any congressionally imposed timelines—are typically analyzed together. *Milligan v. Pompeo*, 502 F. Supp. 3d 302, 317 (D.D.C. 2020).  In essence, these two factors require the court to evaluate "whether 'there [is] any rhyme or reason—congressionally prescribed or otherwise—for [the] agency's delay.'"  *Rashidian*, 2024 WL 1076810, at *6 (alterations in original) (quoting *Khazaei*, 2023 WL 6065095, at *6).  In analyzing these factors, the court may consider "the complexity of the task at hand, the significance (and permanence) of the outcome, and the resources available to the agency."  *Da Costa*, 80 F.4th at 340 (quoting *Mashpee Wampanoag Tribal Council*, 336 F.3d at 1102).  Both factors favor Defendants.

Plaintiffs argue that the lengthy delay in the adjudication of their applications is "well over the range intended by Congress for immigration benefits applications like immigrant visa applications in family-based categories."  ECF No. 6, at 36; *see* ECF No. 1 ¶ 117.  They cite to the INA, which provides that "[i]t is the sense of Congress that the processing of an immigration benefit application should be completed not later than 180 days after the initial filing of the application."  8 U.S.C. § 1571(b); *see* ECF No. 1 ¶ 143.  But this guidance is not binding, and

---

[9] Plaintiffs suggest that application of the *TRAC* factors is premature at the motion-to-dismiss stage.  ECF No. 6, at 28-31.  The court is unpersuaded, as it is the majority view in this Circuit that "[w]here a plaintiff's complaint supplies sufficient factual allegations to evaluate the *TRAC* factors," a court may evaluate "whether the facts alleged are sufficient to state a plausible claim for unreasonable administrative delay."  *Sereshti v. Gaudiosi*, No. 24-CV-1288, 2024 WL 4625802, at *7 (D.D.C. Oct. 30, 2024).  Courts routinely consider the *TRAC* factors when considering a motion to dismiss.  *See, e.g.*, *Tehran*, 2025 WL 3551629, at *5 (collecting cases); *Da Costa*, 80 F.4th at 346 (affirming dismissal of a plaintiff's unreasonable delay claim).  The court will do the same here.

therefore it cannot be considered to set forth a congressionally imposed deadline.  *See Da Costa*, 80 F.4th at 344 (describing Section 1571(b) as an "aspirational statement").  The same is true for Plaintiffs' reliance on the FAM's expectation that all consular posts "strive" to process family-based immigrant visas within sixty days.  ECF No. 6, at 35 (quoting 9 FAM § 504.7-2(b)).  Plaintiffs acknowledge that the FAM's "language is merely precatory," *id.*, meaning that it is on similar footing as the INA's "aspirational statement," *Da Costa*, 80 F.4th at 344.

"Absent a congressionally supplied yardstick, courts typically turn to case law as a guide." *Sarlak v. Pompeo*, No. 20-CV-35, 2020 WL 3082018, at *6 (D.D.C. June 10, 2020).  While "[n]o bright lines have been drawn in this context . . . '[d]istrict courts have generally found that immigration delays . . . between three to five years are often not unreasonable.'"  *Arab*, 600 F. Supp. 3d at 70 (third alteration in original) (quoting *Sarlak*, 2020 WL 3082018, at *6).  "Courts calculate delays in visa processing using the period between the last government action and the issuance of the opinion."  *Asadi v. U.S. Dep't of State*, No. 23-CV-1953, 2024 WL 3835409, at *6 n.2 (D.D.C. Aug. 15, 2024) (internal quotation marks and alteration omitted).  A little over three years will have passed between Plaintiffs' visa interview in January 2023 and the issuance of this opinion.  ECF No. 1 ¶ 70.  Although such a timeline is undoubtedly frustrating, the court is satisfied that Defendants use a rule of reason that does not constitute unreasonable delay.  *See, e.g., Da Costa*, 80 F.4th at 342 (holding that a four-and-a-half-year delay was not unreasonable); *Varghese v. Blinken*, No. 21-CV-2597, 2022 WL 3016741, at *5 (D.D.C. July 29, 2022) (explaining that a four-year delay "would not warrant judicial intervention, standing alone").

The fourth *TRAC* factor, which is "the effect of expediting delayed action on agency activities of a higher or competing priority," is particularly important in the visa context and also favors Defendants.  *Da Costa*, 80 F.4th at 343 (quoting *TRAC*, 750 F.2d at 80).  The D.C. Circuit

has "refused to grant relief . . . where 'a judicial order putting [the plaintiffs] at the head of the queue [would] simply move[] all others back one space and produce[] no net gain.'" *Mashpee Wampanoag Tribal Council*, 336 F.3d at 1100 (third, fourth, and fifth alterations in original) (quoting *In re Barr Lab'ys, Inc.*, 930 F.2d 72, 75 (D.C. Cir. 1991)).  Such would be the case here, where moving Plaintiffs to the front of the visa-adjudication queue would merely reorder all applicants with no change in the overall timeline.

Plaintiffs allege that "there is no queue," ECF No. 6, at 37, and cite a declaration from the previous Acting Director of Screening, Analysis and Coordination in the State Department's Bureau of Consular Affairs, which states that cases in administrative processing "can be neither addressed nor resolved in a first-in-first-out basis," ECF No. 1-3 ¶ 27; *see* ECF No. 6, at 35 (citing declaration).  "Th[ese] assertion[s], however, do[] not grapple with the fact that Plaintiffs' request here boils down to a request that they 'should be prioritized for processing ahead of others.'" *Augustin v. Blinken*, No. 23-CV-76, 2023 WL 4547993, at *6 (D.D.C. July 14, 2023) (quoting *Milligan v. Blinken*, No. 20-CV-2631, 2021 WL 3931880, at *9 (D.D.C. Sep. 2, 2021)).  As the declaration Plaintiffs cite explains, the government does not complete administrative processing on a first-in-first-out basis because it must account for political and logistical factors, including the "extent of review and coordination required," "the timing of when each partner agency completes its review," and "the need to facilitate travel in the national interest . . . or to address emerging threats, and foreign policy priorities."  ECF No. 1-3 ¶ 27.

To be sure, the delay that Plaintiffs face is problematic.  But compelling Defendants to process individual applications presents an individualized solution to a systemic problem and "would presumably delay other adjudications."  *Liu v. Blinken*, 544 F. Supp. 3d 1, 13 (D.D.C. 2021) (quoting *Skalka v. Kelly*, 246 F. Supp. 3d 147, 154 (D.D.C. 2017)).  Additionally,

16

"deference must be given to the State Department's priority-setting and resource-allocation decisions" in the visa-adjudication context. *Arab*, 600 F. Supp. 3d at 71. It would be improper for the court to intervene and expedite Plaintiffs' visa applications at the expense of others. The fourth factor thus weighs heavily in favor of Defendants.

The third and fifth *TRAC* factors concern the impacts of the delay on Plaintiffs. The third factor identifies "whether 'human health and welfare are at stake'—in which case judicial intervention is more justified—and the fifth assesses the 'nature and extent of the interests prejudiced by delay.'" *Milligan*, 502 F. Supp. 3d at 319 (quoting *TRAC*, 750 F.2d at 80). These factors weigh slightly in Plaintiffs' favor. Plaintiffs have alleged "extreme financial, professional, and emotional harm" due to their family's separation, ECF No. 6, at 36, including stress due to the "perpetual status of bureaucratic uncertainty," ECF No. 1 ¶ 11, economic strain from high living costs in Iran due to U.S. economic sanctions, and anxiety over deteriorating U.S.-Iran foreign relations that impacted their ability to travel between the two countries, *see id.* ¶¶ 120-127. These harms are unfortunate. However, without more facts suggesting otherwise, these harms do not threaten Plaintiffs' physical health and well-being in a manner compelling enough to overcome Defendants' advantage on the more important factors. *See Da Costa*, 80 F.4th at 345 (concluding that the third and fifth TRAC factors did not favor the plaintiffs where they did not, "for example, allege that they are unable to access electricity, water, food, or shelter"); *Ahmadi v. Scharpf*, No. 23-CV-953, 2024 WL 551542, at *6-7 (D.D.C. Feb. 12, 2024) (granting the defendants' motion to dismiss despite the plaintiff's claims of healthcare expenses resulting from a visa delay).

Finally, the sixth *TRAC* factor concerns "whether the agency's bad faith caused the delay." *Sawahreh v. U.S. Dep't of State*, 630 F. Supp. 3d 155, 164 (D.D.C. 2022). Plaintiffs argue that Defendants have acted in bad faith by failing to adjudicate their visas, ECF No. 6, at 40, but they

have not shown that the delay was "nefarious or the result of ill will," *Ramirez v. Blinken*, 594 F. Supp. 3d 76, 95 (D.D.C. 2022). "As *TRAC* directs, . . . the lack of plausible allegations of impropriety does not weigh against [Plaintiffs]" and "does not alter the [c]ourt's analysis." *Fakhimi v. Dep't of State*, No. 23-CV-1127, 2023 WL 6976073, at *11 (D.D.C. Oct. 23, 2023).

\* \* \*

As the D.C. Circuit explained in *Da Costa*, delays in visa adjudications are "troubling." 80 F.4th at 344. The costs of this delay have surely been difficult for Plaintiffs. But after weighing the *TRAC* factors, the court concludes that Plaintiffs fail to state a plausible claim for *unreasonable* delay. "The most important factors—those regarding the length of the delay and concerns about line-jumping—weigh in favor of granting the motion to dismiss, and factors three and five are not strong enough to justify the opposite conclusion." *Meyou v. U.S. Dep't of State*, No. 21-CV-2806, 2022 WL 1556344, at *5 (D.D.C. May 17, 2022). Accordingly, the court will dismiss the complaint under Rule 12(b)(6).

## IV.    CONCLUSION

For the foregoing reasons, the court will grant Defendants' Motion to Dismiss, ECF No. 5. A contemporaneous order will issue.

_____
LOREN L. ALIKHAN
United States District Judge

Date:    March 9, 2026

18